**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMY DUNCAN,<br><br>                          Plaintiff,<br><br>v.<br><br>KEARFOTT CORP., *et al.*,<br><br>                          Defendants. | Civ. Action No. 22-5740 (SDW) (JBC)<br><br>**OPINION**<br><br>January 23, 2024 |

**WIGENTON**, District Judge.

Before this Court is Defendant Astronautics Corporation of America's ("Astronautics") motion to dismiss (D.E. 21 ("Motion")) Plaintiff Amy Duncan's ("Plaintiff") First Amended Complaint (D.E. 20 ("FAC")) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1441. This opinion is issued without oral argument pursuant to Rule 78. For the reasons discussed below, Astronautics' Motion is **DENIED**.

**I.**     **BACKGROUND AND PROCEDURAL HISTORY**

In or around March 2021, Plaintiff began working as a Senior Human Resources Manager at Defendant Kearfott Corporation ("Kearfott," and together with Astronautics, "Defendants"), a subsidiary corporation of Astronautics. (D.E. 20 ¶¶ 3, 9.) In her first year, Plaintiff received numerous accolades from her superiors at Kearfott, including Stephan Givant, Vice President of Finance at both Kearfott and Astronautics, and she regularly conducted assignments for Holly

Russek, Astronautics' Vice President of Administration who "directly oversaw and managed the hiring of upper-level employees and management at Kearfott" and "ma[de] all final Kearfott personnel decisions." (*Id.* ¶¶ 10, 29, 36.) Even more, when the Director of Human Resources announced his resignation in March 2022, he encouraged Plaintiff to apply for his position, which she did. (*Id.* ¶ 11.)

One month later, Plaintiff learned that her brother had been diagnosed with Stage 3 blood cancer and that she would become his primary caretaker. (*Id.* ¶ 12.) Plaintiff informed Kearfott's former President, Murray Kennedy, of this information and, accordingly, expressed to him that she would need to apply for intermittent leave. (*Id.*) In response, Kennedy told Plaintiff: "Do what you need to do for your family. I support you." (*Id.*) The following week, however, Plaintiff was confronted by Givant, who "told her to look for another job because Kearfott was going to hire someone else for the Human Resources Director position." (*Id.* ¶ 13.) Givant allegedly refused to explain to Plaintiff the reason for his demand and immediately left her office. (*Id.*) Thereafter, Plaintiff's relationship with Givant became hostile: Givant refused to meet with or speak to Plaintiff, he often criticized her work, and he intentionally tried to impede her ability to perform her daily tasks. (*Id.* ¶ 14.)

Eventually, Plaintiff submitted her application for intermittent FMLA leave on May 25, 2022. (*Id.* ¶ 16.) Although Plaintiff submitted the application to members of upper management at both Kearfott and Astronautics, she never received approval or denial. (*Id.* ¶¶ 16, 20.) Instead, she received an email from Russek and Mark Treffinger, Kearfott's Vice President of General Management, expressing their condolences. (*Id.* ¶ 19.) In addition, Plaintiff alleges that Givant began questioning the documentation and medical conditions underlying her application for intermittent leave. (*Id.* ¶ 18.) Then, on June 16, 2022, Givant informed Plaintiff that Kearfott's

2

former director of human resources was returning to the company, and that her position as Senior Human Resources Manager was being terminated immediately. (*Id.* ¶ 22.) Plaintiff did not receive an exit interview, termination documentation, or severance pay, benefits to which, she alleges, she was entitled under the Kearfott Employee Handbook. (*Id.* ¶¶ 22–23.)

## II.  PROCEDURAL HISTORY

On August 30, 2022, Plaintiff filed a complaint in the Superior Court of New Jersey, Law Division, Passaic County, alleging that Defendants violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and the New Jersey Family Leave Act ("NJFLA"), N.J. Stat. Ann. § 34:11B-1, *et seq.* (D.E. 1 at 5–19 ("Complaint").) Kearfott removed the case to this Court on September 27, 2022 (*see generally id.*) and, shortly thereafter, filed an Answer (D.E. 6). On November 22, 2022, Astronautics moved to dismiss the Complaint, arguing that it was not Plaintiff's employer and thus could not be held liable under the FMLA or the NJFLA. (D.E. 10.) On May 3, 2023, the Honorable Kevin McNulty (now retired) granted the motion and dismissed without prejudice the Complaint. (D.E. 18, 19.) On June 5, 2023, Plaintiff filed the FAC in which she alleges the same claims against the same Defendants. (*See generally* D.E. 20.) Two weeks later, Astronautics filed the instant Motion.[1] (D.E. 21.) The parties timely completed briefing. (D.E. 21, 23, 26.) On January 11, 2024, Plaintiff sought leave to file a supplemental brief in opposition to the Motion. (D.E. 33.) This Court granted that request (D.E. 34), and on January 18, 2024, Plaintiff filed her supplemental brief (D.E. 36). Astronautics filed its response to Plaintiff's supplemental briefing on January 22, 2024. (D.E. 37.)

---

[1] Kearfott filed its Answer to the FAC on July 28, 2023. (D.E. 25.)

3

### III.    STANDARD OF REVIEW

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) ("Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief.") In other words, Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

When evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–11 (3d Cir. 2009) (discussing the *Iqbal* standard). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] . . . that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)). Importantly, a district court considering a motion to dismiss pursuant to Rule 12(b)(6) may only examine the complaint and documents "integral to or explicitly relied upon in the

complaint." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020)).

### IV.     DISCUSSION

The FMLA and NJFLA both aim to balance the demands of the workplace with the medical needs of families, and as such, the statutes prescribe and protect eligible employees' rights to take a period of medical leave. *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005) ("The primary purposes of the FMLA are to 'balance the demands of the workplace with the needs of families' and 'to entitle employees to take reasonable leave for medical reasons.'" (quoting 29 U.S.C. § 2601(b)(1) and (2))); *DePalma v. Bldg. Inspection Underwriters*, 794 A.2d 848, 858 (N.J. Sup. Ct. App. Div. 2002) ("The [NJFLA] . . . 'represents the culmination of a comprehensive legislative effort to maintain the integrity of the family unit and promote flexibility and productivity in the workplace.'" (quoting *D'Alia v. Allied-Signal Corp.*, 614 A.2d 1355, 1357 (N.J. Sup. Ct. App. Div. 1992)).

Though there are some differences, the statutes largely overlap. Each statute elucidates certain rights to which eligible employees are entitled; as relevant here, the FMLA requires employers to provide eligible employees with "12 workweeks of [medical] leave during any 12-month period," 29 U.S.C. § 2612(a)(1), and the NJFLA similarly grants eligible employees medical leave for "12 weeks in any 24-month period," N.J. Stat. Ann. § 34:11B-4. Each statute also permits intermittent leave, subject to certain requirements. *See* 29 U.S.C. § 2612(b)(1); N.J. Stat. Ann. § 34:11B-4(a)–(b). And each statute establishes that an aggrieved employee may sue his or her employer for violations thereunder. 29 U.S.C. § 2617(a); N.J. Stat. Ann. § 34:11B-11. "Due to the similarity of the statutes, courts apply the same standards and framework to claims under the FMLA and the NJFLA." *Wolpert v. Abbott Lab'ys*, 817 F. Supp. 2d 424, 438 (D.N.J.

5

2011) (citing *Santosuosso v. NovaCare Rehab.*, 462 F. Supp. 2d 590, 596 (D.N.J. 2006). This Court will, accordingly, confine its discussion to Plaintiff's FMLA claims with the understanding that the principles apply equally to her NJFLA claims.

Plaintiff brings claims for interference and retaliation under the FMLA. (D.E. 1 ¶¶ 25–47.) Although the elements of each claim differ, both require a plaintiff to assert misconduct by his or her employer. 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with . . . any rights provided under this chapter."); *Capps v. Mondelezz Global*, 847 F.3d 144, 155 (3d Cir. 2017) (listing the elements of an FMLA interference claim); *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012) (describing the elements of an FMLA retaliation claim).

Astronautics insists that the FAC—like the Complaint—still lacks facts sufficient to suggest that it was Plaintiff's employer and, therefore, Plaintiff cannot state a claim against it under the FMLA or NJFLA. (*See generally* D.E. 21.) Additionally, Astronautics argues that, even if it were Plaintiff's employer, the FAC does not allege that it was involved in the decision to terminate her. This Court addresses each argument in turn and finds them unpersuasive.

### A. Joint Employment Relationship

The FMLA defines an employer as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(a). The regulations interpreting the FMLA expressly recognize that "[w]here two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers." 29 C.F.R. § 825.106(a). "Joint employers may be separate

and distinct entities with separate owners, managers, and facilities,"[2] *id.* § 825.106(a); however, both can be held liable for "interfering with an employee's attempt to exercise rights under the Act, or discharging or discriminating against an employee for opposing a practice which is unlawful under FMLA," *id.* § 825.106(e).

To determine whether a joint employment relationship exists, the regulations interpreting the FMLA provide:

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> (1) Where there is an arrangement between employers to share an employee's service or to interchange employees;
> (2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,
> (3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

*Id.* This is a fact-intensive inquiry, which requires district courts to view "the entire relationship . . . in its totality." *Id.* § 825.106(b)(1).

Here, the FAC sets forth facts, accepted as true, to suggest that Astronautics and Kearfott were Plaintiff's joint employers under § 825.106(a). As an initial matter, the FAC asserts that Kearfott and Astronautics were interrelated in several respects: Kearfott is a subsidiary corporation of Astronautics, they "maintained interrelated [human resources] operations," their

---

[2] Notably, a plaintiff may have both a "primary" and "secondary" employer. *See id.* § 825.106(b)(1). A primary and a secondary employer have different responsibilities under the FMLA. For instance, "only the primary employer is responsible for giving required notices to its employees, providing FMLA leave, and maintenance of health benefits." *Id.* § 825.106(c).

7

"officers and directors shared continuous interrelations and communications," and they "shared common ownership and senior management employees." (D.E. 20 ¶¶ 3, 31, 34, 40.)  Although Astronautics argues that joint ownership, standing alone, is insufficient to establish a joint employment relationship under the FMLA, Plaintiff alleges far more than that—she asserts that both Kearfott and Astronautics exercised direct control over her.  To be sure, the FAC states that: (1) Plaintiff was a Senior Human Resources Manager in Kearfott's human resources department, which had "constant and continuous interrelations and communications" with Astronautics' human resource department; (2) Russek, Vice President of Administration for Astronautics, "directly oversaw and managed the hiring of upper-level employees and management at Kearfott" and was responsible "for making all final Kearfott personnel decisions"; (3) during the hiring process, Russek regularly directed Plaintiff to perform tasks, such as "initially screen[ing] potential employment candidates, mak[ing] employment recommendations to . . . Russek[,] and schedul[ing] meetings for . . . Russek to personally interview" the candidates; and (4) Givant, a Vice President at both Astronautics and Kearfott, "interacted almost daily with Plaintiff" and "oversaw a portion of Plaintiff's work."  (*Id.* ¶¶ 9, 26, 29, 30, 33, 36.)

In sum, these allegations suggest that Astronautics and Kearfott were Plaintiff's joint employers under § 825.106(a).  That is, the FAC alleges that Defendants had "an arrangement . . . to share [Plaintiff's] service[s]," and they "are not completely disassociated with respect to [Plaintiff's] employment and may be deemed to share control of [Plaintiff], directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer."  29 C.F.R. § 825.106(a).  Consequently, Astronautics' argument that it was not Plaintiff's joint employer fails.

### B. Astronautics' Involvement in Terminating Plaintiff

Astronautics' next argument, that the FAC lacks allegations of its involvement in Plaintiff's termination, fares no better. Although the facts in the FAC regarding Astronautics' involvement in Plaintiff's termination are thin, Plaintiff sufficiently asserts that Russek was "solely responsible for making all final Kearfott personnel decisions," and that Givant—the Vice President of Finance at both Kearfott and Astronautics—terminated her. (D.E. 20 ¶¶ 10, 36.) At this nascent stage of the litigation, those allegations and the inferences that can be drawn therefrom are enough to demonstrate Astronautics' involvement in the decision to terminate Plaintiff.[3] *Kedra v. Schroeter*, 876 F.3d 424, 434 (3d Cir. 2017) ("[Courts] must 'accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff].'" (quoting *Phillips*, 515 F.3d at 228, 230)). Therefore, Astronautics' Motion will be denied.[4]

## C. CONCLUSION

For the reasons set forth above, Astronautics' Motion is **DENIED**. An appropriate order follows.

                                                       /s/ Susan D. Wigenton
                                          **SUSAN D. WIGENTON, U.S.D.J.**

Orig:        Clerk
cc:          James B. Clark, U.S.M.J.
              Parties

---

[3] Astronautics' contention that Givant was working solely in his capacity as Kearfott's Vice President of Finance when he terminated Plaintiff is unavailing. First, the scope of one's employment is generally a question of fact. In any event, the FAC alleges facts from which this Court can infer that Russek—as the sole decisionmaker for "all final Kearfott personnel decisions"—was involved in the decision to terminate Plaintiff.

[4] As explained earlier in this Opinion, on January 18, 2024, Plaintiff filed a supplemental brief in opposition to the Motion. (D.E. 36.) Plaintiff's supplemental briefing contained documents revealed during discovery, which, Plaintiff insists, demonstrate that Astronautics was, together with Kearfott, her joint employer and that Astronautics was involved in the decision to terminate her. (*See generally id.*) While that may be true, the documents were not "integral to or explicitly relied upon in the complaint," and therefore, this Court did not consider them in reaching its decision. *Princeton Univ.*, 30 F.4th at 342 (quoting *Univ. of Scis.*, 961 F.3d at 208).