<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| AMY DUNCAN,<br><br>                     Plaintiff,<br><br>v.<br><br>KEARFOTT CORPORATION, ASTRONAUTICS CORPORATION OF AMERICA, and JOHN DOES 1-XX,<br><br>                     Defendants. | Civil Action No. 22-5740 (SDW) (JBC)<br><br>**OPINION**<br><br>June 25, 2025 |

**WIGENTON**, District Judge.

Before this Court are Defendants Kearfott Corporation ("Kearfott") and Astronautics Corporation of America's ("Astronautics" and, together with Kearfott, "Defendants") motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 (D.E. 60–61). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This opinion is issued without oral argument pursuant to Rule 78.

For the reasons stated herein, Defendants' Motions for Summary Judgment are both **GRANTED**.

## I.    <u>FACTUAL BACKGROUND[1]</u>

Plaintiff Amy Duncan ("Plaintiff") was employed by Kearfott, a subsidiary of Astronautics, from March 2021 until June 16, 2022, as the Senior Human Resources Manager for

---

[1] Facts cited in this opinion are drawn from Kearfott's Statement of Undisputed Material Facts (D.E. 61-1 ("Def. SOUMF")), Plaintiff's responses thereto and supplemental statement (D.E. 72 ("Pl. Counter-SOUMF")), and Kearfott's responses to Plaintiff's supplemental statement. (D.E. 78-2.) This Court does not refer to Astronautics's statement and Plaintiff's responses thereto because, as discussed below, it does not reach the joint employer issue.

Kearfott's Guidance & Navigation Division in New Jersey. (Def. SOUMF ¶¶ 4–5, 7.) Plaintiff reported directly to Perry Ezell ("Mr. Ezell"), Kearfott's Director of Human Resources, for most of her employment at Kearfott. (*Id.* ¶ 54.) The parties dispute the contours of the relationship between Astronautics and Kearfott as it relates to whether Astronautics was a joint employer, but the parties do not dispute that Plaintiff received an offer letter from Kearfott only, used a Kearfott email address, was listed on Kearfott's organizational chart, received benefits through Kearfott, and never held herself out as employed by Astronautics on her resume. (*Id.* ¶¶ 10–11, 18–20, 24.)

In early April 2022, Plaintiff learned her brother had been diagnosed with a serious medical condition. (*Id.* ¶ 57.) Shortly thereafter, she informed three Kearfott executives — Mr. Ezell, Murray Kennedy, the President of Kearfott, and Stephen Givant ("Mr. Givant"), the Vice President of Finance — that she would need leave to assist with her brother's care. (*Id.* ¶¶ 58–63.) Plaintiff requested Family and Medical Leave Act ("FMLA") forms to initiate the formal leave process in two separate April 2022 emails. (*Id.* ¶¶ 69–71.) On April 18, 2022, Kearfott's HR department sent Plaintiff a Notice of Eligibility and Rights and Responsibilities form. (*Id.*) Callie Shook, a human resources employee, acknowledged that leave to care for a sibling is usually not covered by the FMLA except in cases of *in loco parentis*, but did not otherwise request additional documentation or require certification to that effect. (*Id.* ¶ 71; Pl. Counter-SOUMF ¶ 6.)

Plaintiff submitted a completed Medical Certification on May 25, 2022. (Def. SOUMF ¶ 120.) The form did not indicate that Plaintiff stood *in loco parentis* to her brother, nor did she otherwise provide any such statement or supporting documentation. (*Id.* ¶¶ 122–123.) Plaintiff testified that there is no documentation establishing a formal or legal *in loco parentis* relationship with her brother. (*Id.* ¶ 113.) At the time Plaintiff submitted the form, Kearfott employees, including Mr. Givant and Ms. Russek of Astronautics, incorrectly believed that neither the FMLA

nor the New Jersey Family Leave Act ("NJFLA") applied to siblings. (Pl. Counter-SOUMF ¶¶ 17–20.) Internal emails reflect that both individuals misunderstood the legal standards for coverage and eligibility, and no follow-up was made to clarify Plaintiff's relationship or guide her through the NJFLA process. (*Id.* ¶¶ 18, 20.)

Although Plaintiff now asserts that she intended to seek NJFLA leave, she did not submit any NJFLA-specific paperwork or written request. (Def. SOUMF ¶ 89.) Rather, the forms and communications she submitted referenced only the FMLA. (*Id.* ¶ 87.) Despite the lack of clarity, Plaintiff began using paid time off intermittently in April and May 2022 to care for her brother. (*Id*. ¶¶ 125–141.) Kearfott did not discipline Plaintiff for this time off, reduce her pay, or interfere with her ability to care for her brother. (*Id.*) Kearfott's payroll and human resources records, however, do not reflect any official designation of leave under the FMLA or NJFLA, and Plaintiff was not listed in the Leave of Absence Logs. (Pl. Counter-SOUMF ¶¶ 37–41.)

In March 2022, Mr. Ezell announced his resignation effective April 26, 2022, which resulted in Kearfott undergoing a restructuring of its HR department. (Def. SOUMF ¶¶ 55–56, 145–159.) As early as April 1, 2022, executives had discussed eliminating the Director role and consolidating HR leadership under a returning executive, Vivian Yost. (*Id.*) Plaintiff, having applied for the vacant position, was advised in April that she was likely not being considered for the Director role, that her position might be eliminated, and was encouraged to explore other opportunities. (*Id.* ¶¶ 57, 171–172.) She remained employed until June 16, 2022, when she was informed that her position was to be eliminated. (*Id.* ¶ 182.) Plaintiff contends that the restructuring rationale was pretextual and that her termination was in retaliation for her requesting leave. She cites a series of events, including being excluded from meetings, critical comments by Mr. Givant, and being told she was not being considered for the Director role. (Pl. Counter-

SOUMF ¶¶ 53–63.)  However, internal documents and testimony indicate that the restructuring had been planned independently of Plaintiff's leave request.  (Def. SOUMF ¶¶ 56, 142–159, 171–173.)  Plaintiff did not follow up on her application for the Director role, (*id.* ¶ 178), and Mr. Givant testified that she was not qualified for the position.  (*Id.* ¶ 159.)

Plaintiff further asserts that she requested leave for her own medical condition in late May 2022, but she did not submit any documentation or formal request to that effect.  (*Id.* ¶¶ 187–188.) Her only written leave-related submission was tied to her brother's condition.  (*Id.* ¶¶ 118.) Plaintiff was never denied the opportunity to care for her brother and was not prevented from taking leave.  (*See id.* ¶¶ 125–141.)

## II.    <u>PROCEDURAL HISTORY</u>

On August 30, 2022, Plaintiff initiated this action in the Superior Court of New Jersey, Passaic County.  (*See* D.E. 1.)  The Complaint alleges five causes of action against Defendants: (1) interference with rights in violation of the FMLA, (2) retaliation in violation of the FMLA, (2) interference with rights in violation of the NJFLA, (4) retaliation in violation of the NJFLA, and (5) discrimination and wrongful discharge for exercise of rights under NJFLA.  (*Id.*, Ex. 1 at ¶¶ 25–78.)  On September 27, 2022, Kearfott timely removed the action to this Court pursuant to 28 U.S.C. § 1441(c), and subsequently answered the Complaint on October 17, 2022.  (D.E. 1, 6.) On November 22, 2022, Astronautics moved to dismiss the Complaint on the grounds that it was not Plaintiff's employer and, on May 3, 2023, the Honorable Kevin McNulty (Ret.) granted the motion and dismissed the Complaint without prejudice against Astronautics.  (D.E. 10, 18, 19.) On June 5, 2023, Plaintiff filed the First Amended Complaint alleging the same claims against the same Defendants.  (*See generally* D.E. 20.)  Astronautics again moved to dismiss (D.E. 21), and this Court denied the motion in an opinion and order dated January 23, 2024.  (D.E. 38–39.)

Defendants answered the First Amended Complaint (D.E. 25, 43), the parties proceeded with discovery, and Defendants filed their respective motions for summary judgment on November 15, 2024.

### III.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the moving party meets this initial burden, the burden then shifts to the nonmovant who "must set forth specific facts showing that there is a genuine issue for trial."  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).  The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobnik v. U.S. Postal Serv.*, 409 F.3d

584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  If the nonmoving party "fails

to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as

a matter of law.  *Celotex Corp.*, 477 U.S. at 322–23.  In considering a motion for summary

judgment, this Court may not make credibility determinations or engage in any weighing of the

evidence; instead, the nonmoving party's evidence "is to be believed, and all justifiable inferences

are to be drawn in his favor."  *Tolan v. Cotton*, 572 U.S. 650, 651, 656–57 (2014) (per curiam)

(quoting *Anderson*, 477 U.S. at 255).

## IV.    **DISCUSSION**

### A.  **FMLA Claims (Counts One and Two)**

The FMLA entitles eligible employees to take up to 12 weeks of unpaid leave for, among

other things, the care of a family member with a serious health condition.  29 U.S.C. §§

2612(a)(1)(C), 2613.  The statute prohibits both (1) interference with the exercise of FMLA rights

and (2) retaliation against an employee for asserting those rights.  29 U.S.C. §§ 2615(a)(1)–(2);

*Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508–09 (3d Cir. 2009).  To establish a claim for

interference under the FMLA, a plaintiff must demonstrate: "(1) he or she was an eligible employee

under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the

plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her

intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was

entitled under the FMLA."  *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014) (citation

omitted).  To establish a prima facie case of retaliation under the FMLA, a plaintiff must show that

(1) she availed herself of a protected right under the FMLA; (2) she was subject to an adverse

employment decision; and (3) there was a causal connection between the protected activity and

the subsequent adverse job action.  *Naber v. Dover Healthcare Assocs.*, 473 F. App'x 157, 159 (3d Cir. 2012).  While the interference and retaliation provisions are distinct, they share a threshold requirement that the employee must actually be entitled to FMLA leave in the first instance.  *See Sommer v. Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006) (noting that an interference claim requires an employee to show that he was not only entitled to FMLA benefits but that he was denied those benefits).  Summary judgment is appropriate where the plaintiff cannot establish entitlement to leave as a matter of law.  *See Banner v. Fletcher*, 834 F. App'x 766, 769–70 (3d Cir. 2020) ("Because the record shows that [plaintiff] had exhausted her leave . . ., [defendant] is entitled to summary judgment on [the interference] claim.")

Here, Plaintiff's interference and retaliation claims both fail as a matter of law because the undisputed facts establish that she was not entitled to protected FMLA leave.  Although Plaintiff requested leave to care for her brother, FMLA leave to care for a sibling is only available where the employee stands *in loco parentis* to the sibling.  *See* 29 C.F.R. § 825.122(d)(3).  "Persons who are '*in loco parentis*' include those with day-to-day responsibilities to care for and financially support a child, or, in the case of leave for a family member, those who had such responsibilities when the individual was a child. A biological or legal relationship is not necessary."  *Id.*  No reasonable jury could find, based on this record, that Plaintiff was acting *in loco parentis* to her brother.  Plaintiff has offered no evidence suggesting she had daily responsibilities for his care, financial support, or parental-type decision-making authority at the relevant time.  Plaintiff's deposition testimony, even when viewed in her favor, also clearly establishes that she did not ever understand herself to be requesting FMLA leave.  Because Plaintiff was not entitled to FMLA leave, it logically follows that Defendants cannot be liable for interference or retaliation under the

FMLA as a matter of law. *See Callison v. City of Philadelphia*, 430 F.3d 117, 119–120 (3d Cir. 2005); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146–47 (3d Cir. 2004).

Even assuming that Plaintiff was eligible for FMLA leave, her interference claim independently fails because she was not actually denied any leave. Plaintiff testified that she was permitted to take time off as needed to care for her brother, and no one prevented or discouraged her from doing so. That her leave was not formally recorded in Kearfott's HR records or categorized as FMLA leave is immaterial. Plaintiff admits that she "was allowed to take leave whenever she wanted and that her pay and [paid time off] time were not docked when she did so," but contends that this fact "does not negate the harm Plaintiff sustained." D.E. 74 at 18. While there may be a basis to conclude that Defendants did not correctly apprise Plaintiff of the different types of leave she might be able to take, there is no basis to conclude that Plaintiff was prejudiced in any way since she had already begun taking leave informally to care for her brother, was never denied any leave, and has not put forth any evidence which would imply that she would have structured her leave any differently. *See Owens v. Northwood Ravin, LLC*, No. 21-00373-FDW-DCK, 2022 WL 17970211, at *6 (W.D.N.C. Dec. 23, 2022) (finding no prejudice and, thus, no interference where "Plaintiff testified that Defendants never prevented him from taking time off to care for his daughter" and "Plaintiff has not shown that had he been informed of his FMLA rights, he would have structured his time differently to preserve employment.")

Plaintiff's retaliation claim under the FMLA also fails on the element of causation. The record reflects a legitimate, non-retaliatory reason for her termination: a restructuring of the HR department that applied corporate-wide. (Def. SOUMF ¶ 153–155.) Kearfott went so far as to inform Plaintiff that her position would be eliminated before Plaintiff finalized or specified the duration of her requested leave, (Def. SOUMF ¶¶ 67–81), and was under no obligation to alter its

decision solely because Plaintiff may have subsequently invoked the FMLA.  *See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 137 (3d Cir. 2006) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)) (explaining in the Title VII retaliation context that, "as the Supreme Court has held, an employer need not refrain from carrying out a previously reached employment decision because an employee subsequently claims to be engaged in protected activity").  As discussed in greater detail in the NJFLA section below, this restructuring eliminated multiple roles and was not linked to any leave activity.

Accordingly, because Plaintiff has not raised a triable issue of material fact in relation to her allegations that Defendants interfered with Plaintiff's FMLA leave or retaliated against her for taking FMLA leave, Defendants are entitled to summary judgment as to Counts One and Two.

## B.  NJFLA Claims (Counts Three, Four, & Five)

The New Jersey Family Leave Act (NJFLA), like the FMLA, prohibits both interference with the exercise of statutory leave rights and retaliation for attempting to use such leave.  *See N.J. Stat. Ann.* §§ 34:11B-4, 34:11B-9; *Wolpert v. Abbott Laboratories*, 817 F. Supp. 2d 424, 437 (D.N.J. 2011) ("Due to the similarity of the statutes, courts apply the same standards and framework to claims under the FMLA and the NJFLA.")  Here, it is undisputed that plaintiff never submitted a formal written request for NJFLA leave, nor did she complete any NJFLA-specific documentation. Rather, her only written submissions and communications referenced FMLA forms.  (Def. SOUMF ¶¶ 69, 87, 89.)  Although Plaintiff claims that she intended to seek NJFLA leave, her subjective belief is not sufficient to create a genuine dispute of fact where the record shows she took leave informally, and without denial, discipline, or reduction in benefits.  (Def. SOUMF ¶¶ 125–141.)  Indeed, Plaintiff testified that she was never prevented from taking time off, and no supervisor questioned or opposed her absences.  (*Id.*)  A claim for interference cannot

stand where the plaintiff simply was not denied any leave.  *See Ross v. Gilhuly*, 755 F.3d 185, 193 (3d. Cir. 2014) ("[W]e have made it plain that, for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld.")

Likewise, Plaintiff's retaliation and wrongful discharge claims under the NJFLA fail as a matter of law.  To establish retaliation, Plaintiff must show: (1) she engaged in protected activity under the NJFLA; (2) she was subjected to an adverse employment action; and (3) there is a causal connection between the two.  *Okparaeke v. Newark Bd. of Educ.*, No. 20-16149, 2023 WL 4418599, at *9 (D.N.J. July 10, 2023).  Even assuming Plaintiff's informal communications constituted protected activity, there is no triable evidence of retaliatory motive.  The record reflects that Plaintiff was granted the time she needed, was never disciplined or questioned about her leave, and was not denied any request.  (Def. SOUMF ¶¶ 125–141.)  Plaintiff was advised in April 2022 that her position was at risk due to a company-wide HR restructuring, but Plaintiff continued to work at Kearfott and admits to not believing Mr. Givant's advice that she should "start looking for other employment."  (*Id.* ¶¶ 171–173; Exhibit 4 to Carmagnola Certification, D.E. 61-3, at T53:19-24; Exhibit 7 at T176:18-22.)  She was not replaced; rather, the role was eliminated altogether. (Def. SOUMF ¶¶ 67, 182.)  Courts consistently grant summary judgment where an adverse action is clearly attributable to restructuring reasons unrelated to protected leave activity.  *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 148 (3d Cir. 2004) (holding that an employer's termination of a former employee is protected when the employer successfully demonstrates independent, preexisting grounds for the termination).  Plaintiff's unsupported belief that her leave request must have factored into the decision to terminate her employment is insufficient to raise a genuine issue of material fact and overcome summary judgment.  *See Robertson v Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) (explaining that "an inference based upon a speculation

or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment"). Additionally, Plaintiff's wrongful discharge theory under the NJFLA is duplicative of the retaliation claim and fails for the same reasons. Summary judgment is therefore appropriate on Counts Three, Four, and Five.

**C. Joint Employer Issue**

Astronautics also separately moves for summary judgment on the grounds that it was not Plaintiff's employer or joint employer under the FMLA and NJFLA. However, because Defendants are entitled to summary judgment on all claims on the grounds discussed above, this Court declines to delve into the joint employer issue.

**V.    CONCLUSION**

For the reasons set forth above, Defendants' Motions for Summary Judgment are each **GRANTED**.[2]  An appropriate order follows.

_____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**


Orig:   Clerk
cc:     James B. Clark, U.S.M.J.
        Parties

---

[2] Plaintiff has failed to identify the names of the fictitiously named defendants. Therefore, this Court dismisses John Does 1–XX pursuant to Rule 21. *McCrudden v. United States*, 763 F. App'x 142, 145 (3d Cir. 2019) ("The case law is clear that [f]ictitious parties must eventually be dismissed, if discovery yields no identities." (alteration in original) (quoting *Hindes v. FDIC*, 137 F.3d 148, 155 (3d Cir. 1998))); Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").